**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

LINDA K. HIGGINBOTHAM,

      Plaintiff,

    v.                             Case No. C-1-03-687

OHIO DEPARTMENT OF MENTAL HEALTH,
      et al.,

      Defendants.

## <u>ORDER</u>

This matter is before the Court upon Defendants' motion for summary judgment (Doc. 30), Plaintiff's response (Doc. 33) and Defendants' reply.  (Doc. 34).  Also before the Court are the parties' respective proposed findings of fact and conclusions of law.  (Docs. 35, 37).

### I. Allegations of the Complaint/Procedural History

On October 6, 2003, Plaintiff Linda Higginbotham filed this federal civil rights action against her former employer, the State of Ohio's Department of Mental Health ["ODMH"], as well as against several individual employees of ODMH, in both their official and individual capacities.  (Doc. 1).  Plaintiff, a white female of Appalachian extraction, began working for ODMH in 1999 as a registered nurse at the Pauline Warfield Lewis Center, also known as the Summit Behavioral Health Care ["SBHC"] facility.  Her complaint alleges that in November 2000, after African-American supervisors and administrators at SBHC learned of her cultural heritage, they spoke derisively about her background and began to give her unwarranted negative job performance evaluations.  She further alleges that Defendants repeatedly harassed her

regarding work assignments and duties, "failed to process" discrimination charges that she filed

with the Ohio Civil Rights Commission in May 2001 (Doc. 1, ¶¶ 16-17), failed to institute

measures to stop harassment directed toward her, cited her for absences while on approved leave

in 2002, and attempted to place her on involuntary disability separation while she was on

voluntary disability leave in 2003.

After taking additional disability leave in the summer of 2003, Plaintiff never returned to

SBHC. She later became employed at Residence of Salem Woods and then moved to and

remains employed by the University of Cincinnati Medical Center as a registered psychiatry

nurse.

Plaintiff contends that Defendants violated Title VII by discriminating against her and

subjecting her to disparate treatment on account of her race and ancestry [Counts One and

Three]; violated the Family Medical Leave Act ["FMLA"] through an improper application

process and by disciplining Plaintiff for absences while on approved FMLA leave [Count Two];

violated 42 U.S.C. § 1981 by discriminating against her on account of her race and ancestry

[Count Four]; violated 42 U.S.C. § 1983 by denying her equal protection and due process

through their discriminatory practices [Count Six]; and discriminated against her in retaliation

for her filing of a civil rights complaint and/or for assisting another employee with his civil

rights complaint. [Count Five]. She requests declaratory judgment as to Defendants' alleged

equal protection and FMLA violations, as well as compensatory and punitive damages,

attorneys' fees and costs.

## II. Summary Judgment Motion

On March 11, 2005, Defendants filed a motion for summary judgment as to Plaintiff's

complaint in its entirety. (*See* Doc. 30). As a preliminary matter, Defendants argue that Plaintiff's Title VII claims are untimely because they were not filed within the requisite 90-day period after the EEOC issued its right to sue letter. Additionally, they urge that Plaintiff's Title VII claims fail on their merits, as Appalachian ancestry has not been recognized as a protected class, Plaintiff has not suffered a materially adverse employment action, Plaintiff's work environment was not objectively hostile, and the named individuals are not proper Title VII defendants.

Regarding Plaintiff's claims under § 1981 and § 1983, Defendants assert that the State of Ohio and the individual Defendants in their official capacities are immune from § 1981 liability, that the State is not subject to suit under § 1983, and that the individual defendants in their official capacities enjoy freedom from § 1983 liability coextensive with that of the State. They also argue that Plaintiff's previous filing of a nearly identical complaint in the Ohio Court of Claims constituted a waiver of any federal causes of action, that no § 1981 or equal protection claim lies for discrimination against Appalachians, that no substantive due process right exists as to state employment, and that Plaintiff has failed to show that state remedies were inadequate to address any procedural due process violation. Additionally, Defendants contend that no basis exists for a separate retaliation claim, and that the individual defendants have qualified immunity from suit. Finally, Defendants argue that Plaintiff's FMLA claim is barred by sovereign immunity and the Eleventh Amendment, that the individual Defendants are not subject to FMLA liability, and that Plaintiff's FMLA claim also fails on its merits.

In opposing Defendants' summary judgment motion, Plaintiff insists she did not waive her federal claims by filing an Ohio Court of Claims complaint that was dismissed without

prejudice, and that her federal complaint was timely by virtue of the Ohio savings statute.  (*See* Doc. 33).

### III.  Findings of Fact

1. Plaintiff Linda K. Higginbotham is a white female who was first employed by the Defendant ODMH as a registered nurse in November 1999.

2.  The Defendants are ODMH, Brenda Ford-Burgs, Rodney Sampson, Rhonda Milton, Althea Palmer and Joanna Lierer.

3.  Defendant Brenda Burg-Ford (a.k.a. BJ Maupin) was and remains a supervisor of one of the nursing units located at the Summit Behavioral Health Care Center.  For a period of time, Burg-Ford supervised Higginbotham.

4.  Defendant Rodney D. Sampson is an African-American male who is employed as an Equal Employment Opportunity Officer with ODMH.  Defendant Sampson assisted with ODMH's investigation into Higginbotham's charge of discrimination filed with the EEOC and OCRC.

5.  Defendant Rhonda Milton is an African-American female who is employed as a Human Resources Administrator with Summit Behavioral Health Care.  Defendant Milton processed ODMH's paperwork for Higginbotham's voluntary disability leave, sought the return of ODMH's property and keys while Higginbotham was off work, and sent a letter to Higginbotham on behalf of ODMH regarding a possible non-disciplinary involuntary disability separation.

6.  Defendant Althea Palmer is an African-American female who is employed as a non-supervisory Human Resources Specialist for Summit Behavioral Health Care and whom Plaintiff

claims had a limited role in processing various HR related paperwork.

7. Defendant Joanna Lierer is a Caucasian female who is employed as a Human Resources Specialist II at Summit Behavioral Health Care, and who assists with various employment and labor issues.

8. On or about February 22, 2000, Plaintiff received a mid-probationary employee performance evaluation, which was completed by her supervisor at that time, Burgs-Ford. The evaluation was "meets expectations" across the board and had specific comments regarding Plaintiff's performance.

9. In May of 2000, Plaintiff received her final probationary employee performance evaluation, completed by Burgs-Ford, and again was rated as "meets expectations" across the board.

10. Plaintiff did not appeal or otherwise challenge any of Burgs-Ford's 2000 performance evaluations.

11. At the end of 2000, Plaintiff received her first "annual performance" evaluation, completed by her supervisor at the time, JoAnn Sessions. Plaintiff was rated as "meets expectations" in six out of seven categories, and received a "below expectations" rating on quality. The supervisor noted that Plaintiff's work was not "completed in an accurate manner."

12. Defendant Burgs-Ford claims not to recall talking with Ms. Sessions about the evaluation and never to have seen Plaintiff's 2000 annual review before being deposed.

13. Plaintiff filed an appeal with ODMH to challenge the findings of her initial annual review.

14. In November of 2000, in the course of chatting about upcoming holiday plans,

Plaintiff told Defendant Ford-Burgs that her "kinfolk" were coming and informed Ford-Burgs of her Appalachian background. Plaintiff claims that Ford-Burgs responded to this information with a frown and said nothing.

15. Plaintiff claims that Ford-Burgs once referred to her as a "white Appalachian hillbilly."

16. In May of 2001, Plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission, asserting that due to her Appalachian ancestry, she received a poor evaluation, was closely monitored and scrutinized, and was subjected to derogatory remarks. She claims that subsequent to this filing, the African-American Defendants used their positions to systemically discriminate against her.

17. Plaintiff claims that Defendant Ford-Burgs gave her a poor job evaluation and falsified a "training session" that further degraded perceptions of Plaintiff's job performance. She claims that Defendants Sampson, Milton, Lierer and Palmer used their authority to interfere with her FMLA leave, tried to involuntarily disability separate her, and failed to investigate her claims of discrimination.

18. On July 11, 2001, Defendant Milton blamed Higginbotham for an inadequate staffing problem during a meeting with State administrators from Columbus, stating to Plaintiff that "you brought this on yourself."

19. On November 27, 2001, Defendant Ford-Burgs questioned Plaintiff regarding the manner in which she was sitting in a chair.

20. In January of 2002, Ford-Burgs provided a written statement indicating that certain training had been provided to Plaintiff. Plaintiff denies that such training actually took place.

-6-

21.  Plaintiff claims that in January and February of 2002, Ford-Burgs left her short-staffed and altered her schedule without prior notice.

22.  On or around March 5, 2002, ODMH and Defendant Palmer granted Plaintiff's February 2002 request for FMLA leave to treat a neck and back injury that occurred 17 years before.  The grant allowed her to use leave on an intermittent or day-by-day basis when her condition became exacerbated to the point that she felt unable to work.  Thereafter, Plaintiff made use of her FMLA leave on numerous occasions.

23.  On July 2, 2002, Defendant Lierer sent Plaintiff a written advisory regarding her leave usage, including some FMLA leave usage.

24.  In December of 2002, Plaintiff applied for and received short-term disability leave. Subsequently, Defendant Palmer contacted Plaintiff in order to arrange for ODMH security to pick up Plaintiff's hospital keys and employee badge.

25.  In January of 2003, ODMH sent Plaintiff paperwork for a pre-separation hearing to initiate a non-disciplinary involuntary disability separation pursuant to Ohio Administrative Code 123:1-33-02.  ODMH held off on the administrative separation at Plaintiff's counsel's request.

26.  Plaintiff returned to work on June 3, 2003.  She subsequently received notice that ODMH intended to hold a pre-disciplinary conference to consider the allegation that she had provided confidential client records without authorization from the patients or ODMH during a deposition for a co-worker's case in March of 2003.

27.  After receiving notice of the hearing, Plaintiff left ODMH on disability leave and has not returned.  Subsequently, Plaintiff was medically released from disability and returned to

work at another facility.

## IV. Summary Judgment Standard

Federal Rule of Civil Procedure 56 allows summary judgment to secure a just and efficient determination of an action. This Court may grant summary judgment as a matter of law only when the moving party has identified as its basis for the motion an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158 (1970)). The function of the court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. No genuine issue exists for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* (citing *Cities Serv.*, 391 U.S. at 288-89). If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.,* 391 U.S. at 290, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

## VI. Opinion

**A.     Title VII Claim Against ODMH and Individual Defendants**

Plaintiff brings employment discrimination and retaliation claims under Title VII based

on race and ancestry.  Title VII provides that if the Equal Employment Opportunity Commission decides not to prosecute a claimant's grievance, it must issue a right to sue letter to the claimant.  42 U.S.C. § 2000e-5(f)(1).  Thereafter, the claimant has 90 days in which to file a civil action.  *Id.*; *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.,* 209 F.3d 552 (6th Cir. 2000).

In order to maintain uniformity in application of federal statutes, state tolling and saving provisions do not apply to limitation periods established by Congress.  *See Johnson v. Railway Exp. Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716 (1975) (Tennessee saving statute does not toll Title VII filing requirement); *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 461 (6th Cir. 2001) (citing *Johnson v. Railway Exp. Agency, Inc.,* 489 F.2d 525, 530 (6th Cir.1973)) (state law tolling or saving provisions do not apply to the limitations periods expressly set forth in Title VI); *Davis v. Smith's Transfer, Inc.***,** 841 F.2d 139 (6th Cir. 1988) (state saving statute does not toll statutory filing limitation of Labor Management Relations Act).

The EEOC issued a right to sue letter to Plaintiff on June 11, 2002.  (*See* Higginbotham Deposition, Exh. 1 attached to Ohio Court of Claims Complaint).  While the Court does not know the precise date on which Plaintiff received her right to sue letter, presumably she received it sometime during June of 2002.  Plaintiff filed her initial complaint with the Ohio Court of Claims in August of 2002.  (*See* Court of Claims complaint).  Subsequently, Plaintiff voluntarily dismissed the complaint in the Ohio Court of Claims and filed a complaint with this Court on October 6, 2003, well past the 90-day time limit set fort under Title VII.  Ohio's saving statute does not extend this filing requirement.  Therefore, all Defendants are entitled to summary judgment on Plaintiff's Title VII claims.

**B.      §§ 1981 & 1983 Claims Against ODMH and Individual Defendants in Official Capacities**

It is well-settled law that plaintiffs cannot directly sue a state in federal court under either § 1981 or § 1983. *Johnson v. University of Cincinnati,* 215 F.3d 561, 571 (6th Cir.), *cert. denied*, 531 U.S. 1052 (2000); *see also Hafford v. Seidner,* 183 F.3d 506 (6th Cir. 1999) (holding § 1981 claim against state agency barred by Eleventh Amendment); *Quern v. Jordan,* 440 U.S. 332 (1979) (holding § 1983 does not override Eleventh Amendment). Thus, ODMH and the individual defendants in their official capacities are entitled to summary judgment on Plaintiff's § 1981 and § 1983 claims.

**C.      §§ 1981 & 1983 Claims Against Individual Defendants in Individual Capacities**

Ohio's waiver of sovereign immunity statute, Ohio Rev. Code § 2743.02(A)(1), provides that a plaintiff who files suit against the State in the Court of Claims waives any claims against individual state officers or employees in exchange for the State's waiver of immunity to be sued. The Sixth Circuit has interpreted this provision to mean that filing in the Court of Claims not only "results in a complete waiver of any cognate cause of action against individual state officers or employees, [but also] the Ohio legislature clearly provided for waiver of federal causes of action, as well as causes of action based upon state law." *Leaman v. Ohio Dept. of Mental Retardation & Development Disabilities***,** 825 F.2d 946, 952 (6th Cir. 1987), *cert. denied*, 487 U.S. 1204 (1988).

Plaintiff Higginbotham argues that the *Leaman* holding is not pertinent here because the facts in that case involved a plaintiff who filed claims simultaneously in the Court of Claims and in federal court. According to Plaintiff, because she first filed with the Court of Claims, voluntarily dismissed, and then filed in federal court, *Leaman* does not apply. While Plaintiff's

case does differ from that in *Leaman* in this respect, neither the court in *Leaman* nor Ohio Rev. Code § 2743.02 in any way restricts its application to those situations in which a plaintiff has filed in the Court of Claims and federal court simultaneously.  Therefore, Plaintiff's filing in the Court of Claims constituted a complete waiver of any state or federal claims against the individual employees.

The sovereign immunity waiver statute does provide an exception to waiver of claims against employees where it is alleged that the conduct was "manifestly outside the scope of the officer's or employee's office or employment or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."  Plaintiff has not alleged that the actions of the individual defendants fall under this exception.  Thus, the individual defendants are entitled to summary judgment on the § 1981 and § 1983 claims.

Furthermore, procedural defects notwithstanding, Plaintiff's § 1981 and Title VII claims cannot survive summary judgment because Appalachian ancestry has not been recognized as a protected status under any federal law to date.  *See, e.g., Bronson v. Board of Educ. of Cincinnati*, 550 F. Supp. 941, 946 (S.D. Ohio 1982) (noting that "Appalachians do not have a common national origin other than that which they share with the general population of this country").  This Court declines to extend such recognition here.

**D.  FMLA Claim**

The Sixth Circuit has determined that "the FMLA does not impose individual liability on public agency employers."  *Mitchell v. Chapman*, 343 F.3d 811, 833 (6th Cir. 2003), *cert. denied*, ___ U.S. ___, 124 S. Ct. 2908 (2004).  In the context of the FMLA, the term "employer" includes "any person who acts, directly or indirectly, in the interest of an employer to any of the

*-11-*

employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I).  The individual Defendants

therefore by definition qualify as "employers" under the facts of this case.  Thus, the individual

Defendants are entitled to summary judgment on Plaintiff's FMLA claim.

With respect to Plaintiff's FMLA claim against ODMH and the individual defendants in

their official capacities, the Sixth Circuit has held that private litigation to enforce the FMLA

against a state may not proceed in federal court.  *Sims v. University of Cincinnati,* 219 F.3d 559

(6th Cir. 2000).  Subsequent to the decision in *Sims,* the United States Supreme Court held that

state employees may recover money damages in federal court in the event of a state's failure to

comply with the FMLA's family-care provision.  *Nevada Dept. of Human Resources v. Gibbs*,

538 U.S. 721 (2003).  The Supreme Court did not address in *Gibbs* whether a state employee is

barred from recovering money damages in federal court in the event of a state's failure to comply

with the FMLA's self-care provision, which is the FMLA provision at issue in this case.

Recently, however, the United States Court of Appeals for the Sixth Circuit addressed that precise

question, and held "that the self-care provision of the FMLA is unconstitutional insofar as it

purports to abrogate state sovereign immunity."  *Touvell v. Ohio Dep't of Mental Retardation and*

*Developmental Disabilities*, ___ F.3d ___, 2005 WL 2173626 at *6 (6th Cir. Sept. 9, 2005).  As

this Court is bound by that determination, Ohio's Eleventh Amendment immunity bars Plaintiff

from proceeding against the Defendants in this Court on her claim under FMLA's self-care

provision.  Defendants therefore are entitled to summary judgment on that claim.


**VII. Conclusion**

IT THEREFORE IS ORDERED that Defendants' motion for summary judgment is

*-12-*

GRANTED.  Plaintiff's claims hereby are DISMISSED, and this action hereby is TERMINATED

on the docket of the Court, at Plaintiff's cost.


                               s/ Herman J. Weber
                                  _____

                                  Herman J. Weber, Senior Judge

                                  United States District Court